STATE *vs.* BENJAMIN F. CONLEY.

PROVIDENCE—FEBRUARY 8, 1901.

PRESENT: Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Intoxicating Liquors.*

A building in which a sale of intoxicating liquors was alleged to have been made set about twenty feet back from the highway and ran back about fifty feet. The barroom was in the basement on the back side of the building, and the only entrance thereto was through the back side of the

building, the side farthest from the highway. A highway ran in front of the building, but there was no public traveled way along the other three sides :—

*Held*, that such an entrance to the barroom was one "other than directly from a public traveled way," and that the allowing such an entrance to exist after the license had been granted was a violation of Gen. Laws R. I. cap. 102, § 5, and rendered the license thereby void.

*Held*, further, that the word "direct," as used in the statute, meant a *straight* as opposed to a circuitous way, this construction being in harmony with the intent of the statute and necessary to accomplish its purpose.

*Held*, further, that while the statute included in its prohibition entrances through other rooms or buildings, it should not be limited to prohibit such entrances only.

(2) *Construction of Statutes. Primary and Secondary Meaning.*

In the construction of statutes a secondary meaning may be included with, but should not be preferred to or exclude, a primary meaning.

(3) *Intoxicating Liquors. Protection of License.*

The defendant requested the court to charge that the license, being regular on its face, protected the defendant. This was refused :—

*Held*, no error. The fact that the defendant allowed the illegal entrance to exist after the granting of the license and prior to the time of the sale, rendered the license void by operation of law.

(4) *Intoxicating Liquors. Attacking License.*

A license may be attacked in any proceeding for any cause that renders it void.

(5) *Intoxicating Liquors. Reviewing Action of Licensing Body.*

Whether or not a license for the sale of intoxicating liquors was issued in the first place correctly, if an entrance in violation of Gen. Laws R. I. cap. 102, § 5, is allowed to be used after the license is issued, the license is thereby rendered void. While the action of the licensing body in granting the license cannot be reviewed in a proceeding of this kind, neither can the granting of the license affect subsequent acts of the defendant in violation of chapter 102.

(6) *Intoxicating Liquors. Questions of Law and Fact.*

It is a question of fact for the jury whether or not the entrance to a barroom comes within the definition of a direct or indirect passage, as given by the court.

(7) *Intoxicating Liquors. Direct Entrance.*

An indirect way does not become a direct way within the meaning of chapter 102, section 5, because it is the only way.

(8) *Construction of Statutes. Typographical Error.*

The court committed no error in instructing the jury that the word "form"

in Gen. Laws R. I. cap. 102, § 5, was intended to be and to mean "from," the error being purely typographical and entirely foreign to the context, while the corrected word was in harmony therewith and was the word used in a previous statute identical with the one in question.

INDICTMENT charging a violation of Gen. Laws R. I. cap. 102. The facts are stated in full in the opinion. Heard on petition of defendant for a new trial, and new trial denied.

BLODGETT, J. This is a petition for a new trial by the defendant, who was convicted on March 15, 1900, before a jury on a complaint and warrant charging him with an illegal sale of intoxicating liquor to one Frank Babineau in the town of Warwick on the 22d day of July, 1899. The defence did not deny the sale alleged in the complaint, but set up in justification thereof a license purporting to have been issued by the town council of Warwick on July 10, 1899.

The building in which the sales took place set about twenty feet back from the highway and ran back about fifty feet. The barroom was in the basement on the back side of the building, and the only entrance thereto, so far as appeared by the testimony, was through the back side of the building; that is, the side farthest from the highway. A highway ran in front of the building, but there was no public traveled way along the other three sides of the building. There was no conflict of testimony upon any material fact.

(1)     The presiding justice ruled that such an entrance to a barroom was one "other than directly from a public traveled way," and that the allowing such an entrance to exist after the license had been granted was a violation of section 5, chapter 102, of the General Laws of Rhode Island and rendered the license thereby void, and charged the jury that if they believed the testimony of the witnesses as to the sale and the location of the entrance to the barroom, they must find the defendant guilty.

Section 5, chapter 102, is as follows :

"No license shall be issued for the sale of intoxicating liquors in any place, except licensed taverns, where a dwelling-house, or a place used as a dwelling-house, is connected

therewith from within such licensed place; and no license shall be granted for the sale of intoxicating liquors in any place, except licensed taverns, to which an entrance shall be allowed other than directly form a public traveled way; and if any such entrance shall be allowed, or any such connection be made after such license is granted, said license shall thereby be rendered void."

The defendant asks for a new trial on the grounds:

1. That he did not have a full, fair, and impartial trial.

2. That the presiding justice erred in his rulings at the trial of said case.

3. That the verdict in said case was against the evidence and the weight thereof.

As to the first ground, we are of the opinion that the defendant had a full, fair, and impartial trial. The proceedings were regular, and no objection to any of them was made by the defendant, except as hereinafter mentioned.

The only exceptions taken to the rulings of the presiding justice were to the construction of the word appearing as "form" in section 5 of chapter 102 of the edition authorized by the General Assembly of the General Laws of 1896; to the construction of said section 5 as to what constitutes an entrance to a barroom "other than directly from a public traveled way;" and to the refusal to grant defendant's requests to charge.

(8)    We are of opinion that the presiding justice held that the word in section 5 of chapter 102 of the General Laws after "directly" and before "a" was, and was meant to be and to mean, "from."

The error in the authorized edition is purely typographical. The word "form" is entirely foreign to the context, and the word "from" is in harmony with the context. Moreover, said section 5 is identical with section 5 of chapter 816 of the Public Laws, passed August 1, 1889, except that in section 5 of chapter 816 the word "from" is correctly spelled. Said section 5 of chapter 816 was not amended or repealed until the revision of 1896.

(1)    The presiding justice properly ruled that "direct" means

straight, that a circuitous way or a crooked way was not a direct way, and that an entrance to a barroom requiring a circuitous or crooked route of travel from the highway to the barroom was an entrance "other than directly from a public traveled way."

The word "directly" is derived from the Latin "*directus*," straight, p. p. of "*dirigere*," to set in a straight line. The primary idea is of space, in a straight line, rectilinearly, undeviating, etc. All the secondary meanings are analogous to the idea of straightness in space. The following are the primary definitions of the leading authorities:

The Century Dictionary. (1) In a straight line or course, literally or figuratively. (2) In a direct manner without the intervention of any medium.

Webster's International Dictionary. (1) In a direct manner; in a straight line or course. (2) In a straightforward way, without anything intervening.

Worcester's Dictionary. In a direct manner; rectilinearly.

Bouvier's Law Dictionary. (direct) Straightforward.

Anderson's Dictionary of Law. (direct) Straight; not circuitous; immediate, the first or original.

This construction is in harmony with the intent of the statute and necessary to accomplish its purpose.

The clause of the statute under consideration is commonly known as "the back-door law." Its intent is to promote the observance of the laws relating to liquor saloons and to prevent the violation thereof by requiring that entrance to such saloons be under direct public observance from the highway.

An analogous statute passed by the General Assembly with the same general intent is section 62 of chapter 102 of the General Laws, commonly known as the "screen law," which requires that on Sundays everything be removed from the licensed premises which would prevent a clear view of the interior by passers-by. This section does not expressly provide that the view shall be from the highway, but it implies as much, since the public ordinarily would have no right to pass by saloon windows not opening on a highway. This statute is additional evidence of the intent of the General

Assembly to require barrooms to be located close to the highway, under easy public observance.

The defendant claimed at the trial that section 5 of chapter 102 prohibited only entrances through other rooms or buildings. We are of opinion that the statute includes in its prohibition such entrances also, but that it cannot be limited to prohibit such entrances only.

(2)   As prohibiting entrances through other rooms, buildings, etc., which may have doors successively in a straight line from the street, the language of the statute must be given a secondary meaning—as immediately for directly. A secondary meaning may be included with, but should not be preferred to or exclude, a primary meaning.

Again, the construction suggested by the defendant, if exclusive, would defeat the intent of the statute. Under such a construction entrances to barrooms might be located not only in the rear parts of buildings, but also in buildings behind other buildings—entirely screened from observation from the street.

An entrance to a liquor saloon on the side of a building opposite from the highway, leading from the saloon immediately out of doors, whence there are no obstacles around the house to the street, does not satisfy the statute. Such an entrance is one directly from the back yard and not directly from the street. For a construction of a similar statute upon facts almost identical with those of the case at bar—*Commonwealth* v. *Ferden*, 141 Mass. 28; in which the opinion, by Morton, C. J., is as follows;

"By the defendant's license he was required to close permanently all entrances to the licensed premises other than those from the public street or streets upon which such premises are located. This requirement is in accordance with the statute, Pub. Stat. C. 10, § 12. The licensed premises of the defendant were a saloon thirty feet deep, with a door on the street front opening into the saloon. There was another door at the rear of the saloon opening upon a driveway from the street to the door, which was not kept closed. By neglecting to keep this rear door closed, the defendant violated the license.

' " The purpose of the legislature, manifested in this and other provisions of the statute, was that the premises licensed and the entrances to them should be open and exposed to view from the public streets. The plain intent of the statute is to prohibit back entrances, and to permit the use of such entrances only as are directly upon the street. The rear door of the defendant was an entrance from the driveway, and not an entrance from the public street within the meaning of the statute and the license. The court, therefore, rightly ruled that, upon the conceded facts, the defendant was guilty."

(3)     There was no error in refusing the defendant's requests to charge the jury as follows :

1. That the license, being regular on its face, protected the defendant.

The defendant allowed the illegal entrance to exist after the granting of the license and prior to the time of the sales complained of in this action; and the evidence showed that the defendant personally conducted the state's witnesses through the illegal entrance into the saloon, where they subsequently bought the liquor. The license, therefore, though regular on its face, had become void by operation of law prior to the time of the sale complained of.

If the town council had revoked the defendant's license and the defendant had offered the license as a justification of a sale made after revocation, the defendant could not be heard to argue that the license, being regular on its face, protected him ; and the only difference between this supposed case and the one at bar is that in the case at bar the license became void by operation of law instead of by revocation.

(4)     It is conceded that a license regular on its face cannot be attacked collaterally for any cause which renders it merely *voidable*. But a license can be attacked in any proceeding for any cause which renders it *void*. Indeed, a void license cannot be attacked except collaterally. A licensing board may properly refuse to take jurisdiction of proceedings to revoke a license which has become void by operation of law. There is nothing of which to take jurisdiction, and no action of the licensing board could have any effect.

(5)  The defendant also requested the court to instruct the jury that the question of directness of access having been passed upon by the town council, the licensing body, it cannot be reviewed in this proceeding.

The question whether the town council properly granted the license cannot be reviewed in this proceeding.  But that is not the question in this case.  The question in this case is whether the defendant allowed an entrance forbidden by statute to exist *after* the license had been granted, and the presiding justice rightly instructed the jury :

" That whether or not the license was issued by the (the town council) in the first place correctly, if this entrance were allowed to be used after the license was issued, it comes within the purview of the statute, and the license is thereby rendered void."

(6)  The defendant further excepted to the refusal of the court to charge the jury as follows :  " That the question whether this way of travel from the gate to this door, as described by witnesses, constituted a direct way or not is a question of fact for the jury and not of law."

To this the presiding justice properly replied :

" It is a fact for the jury to decide whether or not the doorway, as they believe it to be from the evidence of the witnesses, comes within the definition of a direct or indirect passage, as given by the court."

(7)  Another ground of exception relied upon by the defendant is based upon the refusal of the court to instruct the jury " that if the jury find that there was but one way to get to this saloon from the highway, as described here, they are justified in finding that that was a direct way."

To this it is sufficient reply to say that an indirect way within the meaning of the statute does not become a direct way merely because it is the *only* way.

And upon a consideration of the evidence we are of opinion that the verdict was clearly justified.

Petition for a new trial dismissed, and case remitted to the Common Pleas Division for sentence.

*Huddy & Easton,* for the State.

*Henry W. Kimball,* for defendant.