Merrick, J.
This is an action to recover for the defendant-insurer’s alleged breach of contract and violations of G.L.c. 93A and 176D in denying the plaintiff-insured’s claim for damage to his vehicle which purportedly occurred when the vehicle was stolen.
The trial court made a finding for the plaintiff, assessed breach of contract damages in the amount of $2,698.67 and ordered that such damages be trebled and attorney’s fees be determined pursuant to G.L.c. 93A, §9(A).[1] The defendant-insurer now claims to be aggrieved by the court’s action on the defendant’s requests for rulings of law.
The evidence indicates that the plaintiff and his father owned a 1986 Chevrolet Iroc Camaro which the plaintiff reported was stolen on the night of June 22-23, 1990 from a parking space at his apartment complex in Malden. At the time of the incident, the plaintiff’s driver’s license was suspended, and the car had reportedly been left locked for several days. A Chapman security device, which the plaintiff claimed had been malfunctioning, was not engaged.
The plaintiff immediately reported the theft to the police, and gave notice to his insurance agent on June 29, 1990. The defendant did not receive notice of the claim until July 6,1990.
The vehicle was recovered a few days after the claimed theft in a damaged condition in Quincy. In his July 28,1990 Affidavit of Vehicle Theft and Vandalism, the plaintiff described damage to the vehicle’s steering column, steering wheel and dashboard, scratches and dents on the exterior, and some burns on the carpet and seats which had not spread. The plaintiff also noted that damage to the engine “may become apparent later.”
An expert retained by the defendant determined, however, that the damage to the steering column was only cosmetic in nature. The damage did not reveal the locking pins and permit release of the steering wheel so as to have enabled a thief to steer and operate the vehicle. The ignition cylinder remained intact, there was no damage to the exterior key hole of the cylinder, and an internal examination by means of a borescope indicated the absence of any tool marks which would have *135 been present if the lock had been forced or picked. The expert testified that he had informed the defendant-insurer that, in his opinion, the plaintiffs car could not have been driven to where it was found in Quincy without the use of a proper key. The expert also noted that the presence in the oil filter of a large amount of carbonaceous materials, metal particles and shavings indicated present or future mechanical problems.
Because of the expert’s conclusion that the vehicle could not have been driven without the use of a proper key, the insurer required a statement from the plaintiff of the number and location of all keys. In his July 28,1990 Affidavit, the plaintiff stated that there was one set of keys to his car which was not missing. In a telephone recorded statement on August 21,1990, the plaintiff indicated that his parents also had a set of keys and that none were missing. At a September 21,1992 meeting attended by the plaintiff, his father and an investigator, the plaintiffs father stated that he had had a third set of keys made.
There was also evidence that subsequent to its receipt of the plaintiffs claim, the defendant made repeated, unsuccessful efforts by mail and telephone to contact the plaintiff for an investigation, and that there were delays in the plaintiffs filing of certain statements and reports. The trial judge found that “due to plaintiffs work schedule, his lack of viable transportation and plain procrastination, there were delays,” but that the plaintiff had immediately reported the theft to the police, responded to the insurance company within the time frame prescribed by the policy, submitted to an investigation deposition, and eventually satisfied all requests • for documents and other information.
1. The defendant’s principal argument on this appeal is set forth in its request for ruling number 8:
As a matter of law, the plaintiff had admitted failing to cooperate with the Insurance Company as set forth in defendant’s First Request for Admissions, dated April 21,1992, and never responded to by the plaintiff Steven Meagher. Mass Rule [sic] Civ. R 36 requires that any matter requested ‘is admitted unless within after [sic] thirty days after service of the request, or within such shorter or longer time as the Court may allow, the party to whom the request is directed serves upon the party requesting the admission either (1) a written statement signed by the party under the pains and penalties of perjury specifically ... ’ M.R.C.P. [sic] 36 (emphasis added). In the instant case, the admissions promulgated upon [sic] the plaintiff were signed by plaintiff’s counsel and not by the party, Steven Meagher, under the pains and penalties of peijury. Therefore, as a matter of law, the First Request for Admissions promulgated to the plaintiff, Steven Meagher, have been admitted as a matter of law.
DENIED, MIXED LAW AND FACT.
The trial judge’s ruling on request number 8 was technically correct, and it is not surprising that a request of such verbosity should improperly include factual issues. Requests which present mixed questions of fact and law are properly denied. Liberatore v. Framingham, 315 Mass. 538, 543-544 (1944); Iodice v. Bradco Cleaners, Inc., 1993 Mass. App. Div. 54, 56.
The request was also correctly denied as to its substance. The defendant filed Dist./Mun. Cts. R. Civ. R, Rule 36 requests for admissions which called upon the plaintiff to admit or deny both a number of statements concerning his alleged prior misrepresentations about the location and number of keys and the condition of the car’s engine, and a number of conclusions that such alleged misrepresentations constituted a breach of the cooperation clause of the parties’ insurance policy. The plaintiff filed a written response, admitting some but denying most of the defen- *136 danfis statements, which was signed by his attorney. Since the response was not signed by the plaintiff himself under the penalties of perjury, it failed to constitute an answer to the defendant’s requests for admissions. Ordinarily, all unanswered Rule 36(a) requests are taken as admitted and all matters included therein are “conclusively established.”[2] Dist./Mun. Cts. R. Civ. R, Rule 36(b)\ Reynolds Alum. Bldg. Products Co. v. Leonard, 395 Mass. 255, 257 (1985).
In this case, however, the unanswered requests for admissions were wholly devoid of probative effect because the defendant failed to introduce them at trial.
In order to obtain the benefit of the admission, the party who relies upon it must introduce it into the record.... To use an admission at trial, one merely reads it into the record prior to the close of evidence.
J.W. SMITH & H.R. ZOBEL, RULES PRACTICE §36.9 at 402 (1975). The admission must be offered into evidence to give the opposing party an opportunity “to test its evidentiary competence, to illuminate its significance, and to move under [Rule] 36(b) ... for withdrawal or amendment of the admission.” S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass. App. Ct. 477, 479 (1980). Given the defendant’s failure to offer the unanswered requests into evidence, there were no admissions by the plaintiff that he violated the cooperation clause by misrepresenting any facts material to his insurance claim. Defendant’s request for ruling number 8 was thus properly denied.
2. There was also no error in the denial of defendants requests numbers 3 and 5 that the evidence “required” a finding for the defendant as a matter of law. A “required” request is properly denied if there is any evidence which would permit or warrant a finding in favor of the opposing party. Casey v. Gallagher, 326 Mass. 746, 748 (1951). Contrary to the defendant’s contention, the evidence was sufficient herein to warrant the courts finding that the plaintiff’s car was stolen and damaged without collusion or connivance on his part, and that the damage was thus an “accidental” loss covered by the parties’ insurance policy[3] The reported evidence also sustains the court’s additional, detailed findings of fact that the plaintiff’s alleged misrepresentations were either innocent or shown to be immaterial, and that there was no breach of the policy’s cooperation clause justifying any denial of the plaintiff’s insurance claim. See Imperiali v. Pica, 338 Mass. 494, 498 (1959).
3. The evidence was also sufficient, however, to have permitted a contrary finding in the defendant’s favor that the claimed loss was not accidental and that the plaintiff’s conduct amounted to a breach of the policy’s cooperation clause. The judge could have inferred that the vehicle was taken from Malden with the use of *137 one of the plaintiffs keys and that cosmetic damage was done to the steering wheel to conceal that fact. The judge could also have permissibly concluded that the plaintiff delayed making a full report to the insurer and “stonewalled its investigation.” See Guanci v. St. Paul Fire & Marine Ins. Co., 1983 Mass. App. Div. 238. Given the sufficiency of the evidence to have permitted a finding for the defendant on the plaintiffs breach of contract claim, the trial judge should not have denied the defendants request for ruling of law number 4 that “the evidence warrants a finding for the defendant.” Belger v. Arnot, 344 Mass. 679, 680 (1962).
Such denial did not, however, constitute reversible error. The trial judge made detailed findings of fact which demonstrated her application of correct principles of law to the plaintiff’s contract claim, including the ruling that the burden of proving that the loss was “accidental” was on the plaintiff. Rich v. United Mut. Fire Ins. Co., 328 Mass. 133, 134 (1951); Murray v. Continental Ins. Co., 313 Mass. 557, 561 (1943); Rosen v. Royal Indem. Co., 259 Mass. 194, 196 (1927). The judge’s findings also expressly referenced evidence favorable to the defendant, but indicated her acceptance of the credibility of [he plaintiff’s contrary version of events. Irrespective of the denial of request number 4, the judge’s findings of fact clearly established that the ultimate decision on the plaintiff’s breach of contract claim was based on a proper resolution of questions of fact rather than on an erroneous ruling that the evidence was insufficient as a matter of law to have permitted a finding for the defendant. DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 104 (1975); Liberatore v. Framingham, supra at 542; Cooperstein v. Turner Bros. Construc., Inc., 1992 Mass. App. Div. 249, 251-252.
4. The judge’s findings did not, however, justify her denial of the defendant’s request that the evidence warranted a finding in its favor on the plaintiff’s claim for unfair settlement practices. The court based its finding for the plaintiff and its award of G.L.c. 93A treble damages and attorneys’ fees on a determination that the defendant should not have denied liability for the plaintiff’s loss. The dispositive issue under G.L.c. 176D and 93Awas not whether the damage to the plaintiff’s car was accidental and thus covered by the parties’ insurance policy, but whether the insurer had a reasonable basis for concluding, in good faith, that it was not. Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987). See generally, Polaroid Corp. v. The Travelers Indem. Co., 414 Mass. 747, 754 (1993).
The reported evidence of the defendant’s investigation, its use of expert testing, its reliance on expert opinion that the car had not been stolen, and the plaintiff’s own dilatory conduct clearly constituted a reasonable basis for the defendant’s rejection of the plaintiff’s insurance claim. See generally, Jacobs v. Town Clerk of Arlington, 402 Mass. 824, 829 (1988); Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 677 (1983). “A plausible, reasoned legal position that may ultimately turn out to be mistaken — or simply as here, unsuccessful — is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.” Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994). Absent from the record in this case is any suggestion of the defendant-insurer’s bad faith, ulterior motives, arbitrary or unreasonable action or any other unfair and deceptive conduct which would permit recovery under G.L.c. 93A and 176D. Compare, e.g., Wallace v. American Mfgrs. Mut. Ins. Co., 22 Mass. App. Ct. 938, 939 (1986); Trempe v. Aetna Cas. & Surety Co., 20 Mass. App. Ct 448, 455-456 (1985). See generally, Boston Symphony Orchestra Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14-15 (1989).
Accordingly, the trial court’s judgment for the plaintiff is vacated. The finding for the plaintiff on his G.L.c. 93A and 176D claim is reversed. The court’s finding for the plaintiff on his breach of contract claim is affirmed, and judgment is to be entered for the plaintiff in the amount of $2,698.67 plus interest and costs.
So ordered.

The attorney’s fees have not been determined, and it is not clear whether the trial judge intended to make a Dist./Mun. Cts. R. Civ. R, Rule 64(d) interlocutory report. In view of our decision, however, the issue is moot.

A matter deemed admitted under Rule 36(b) is “conclusively established unless the court on motion permits withdrawal or amendment of the admission.” The court may not sua sponte ameliorate the effect of admissions made by an improvident failure to answer; but the parties should have a chance to be heard on the effect of withdrawal or amendment. Reynolds Alum. Bldg. Products Co. v. Leonard, supra at 260-262. The plaintiff herein would not have had to withdraw or amend his response substantively, but would have needed only to amend by adding his signature under the penalties of perjury. The defendant would have been hard pressed to show prejudice by such action. Id. at 260, n. 9. The plaintiff made no such motion because the defendant, presumably hoping to take advantage of the plaintiff’s procedural error, did not introduce the admissions into evidence during trial when the plaintiff could have acted, but instead attached the admissions to its requests for rulings filed after the close of the evidence.

The plaintiff’s claim was for benefits under the “comprehensive” coverage provisions of his standard form Massachusetts automobile insurance policy which included coverage for “direct and accidental damage or loss” to his vehicle.